**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **BRAD O'BRIEN,** *as personal representative of the Estate of Melissa Allen,* | ) ) ) ) |
| **Plaintiff,** | ) Civil Action No. ) 21-10621-NMG |
| v. | ) ) |
| **FERNANDO ROCA, M.D. et al.,** | ) ) |
| **Defendants.** | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of the death of Melissa Allen ("Allen" or "the decedent") in August, 2016, after she was treated by Dr. Fernando Roca, ("Dr. Roca"), in July, 2016, at Lowell General Hospital ("the Hospital") in Massachusetts. Pending before the Court is the government's motion to substitute itself for defendant Dr. Roca and the cross motion of Brad O'Brien, the representative of the estate of the decedent ("plaintiff"), to remand the case to state court. For the reasons that follow, the motion to substitute will be allowed and the motion to remand will be denied.

I.  __Factual and Procedural Background__

In July, 2016, Allen was admitted to the Hospital after suffering multiple seizures at her home.  Although Allen was unaware of the fact, she was found to be pregnant and was treated at the Hospital by the attending obstetrician, Dr. Roca. After delivering a child, Allen was transported to Tufts Medical Center in Boston, where she died 11 days later from medical complications related to her pregnancy.

In June, 2019, plaintiff filed suit in the Massachusetts Superior Court for Middlesex County against Dr. Roca and several other Hospital employees alleging, inter alia, negligence in their treatment of Allen.  In April, 2021, the government removed that action to this Court pursuant to 42 U.S.C. § 233(c), and, on the same day, noticed the substitution of itself for Dr. Roca.  Shortly thereafter, the government moved to dismiss counts one through eight of the complaint for lack of subject matter jurisdiction and for failure to state a claim.

In November, 2021, this Court allowed the government's motion to dismiss.  This Court held that under the Westfall Act, 28 U.S.C. § 2679(d), the United States was properly substituted for Dr. Roca and that, accordingly, plaintiff's claims were time-barred.

Plaintiff appealed the decision to the First Circuit Court of Appeals ("First Circuit") in January, 2022.  On appeal, the

-2-

government disavowed its prior reliance on the Westfall Act and urged the First Circuit to affirm on a new basis, that substitution was proper under the Public Health Service Act ("PHSA"), 42 U.S.C. § 233.  The First Circuit subsequently held that there was an insufficient evidentiary record to determine whether the government's new basis for substitution was proper, and vacated and remanded the case.  O'Brien v. United States, 56 F.4th 139 (1st Cir. 2022).

## II.  Motion to Substitute

### A. Statutory and Regulatory Background

The propriety of substitution hinges on whether Dr. Roca has been properly deemed an employee of the Public Health Service ("PHS") for the medical service he provided to the decedent under 42 U.S.C. § 233(g) and related regulations.

PHSA protects PHS employees from personal liability for injuries resulting from the performance of medical services rendered in the scope of their employment. 42 U.S.C. § 233(a). For an action against a PHS employee filed in state court, PHSA requires removal to federal court upon the Attorney General's certification that the PHS employee acted within the scope of his or her employment. 42 U.S.C. § 233(c).  Once in federal court, the government is substituted as the defendant and an

action under the Federal Tort Claim Act, 28 U.S.C. § 1346,

("FTCA") becomes the exclusive remedy.  42 U.S.C. § 233(a), (c).

Under the Federally Supported Health Centers Assistance Act of 1995 ("FSHCAA"), employees of health centers that receive federal funds pursuant to 42 U.S.C. § 254b may avail themselves of the same liability protection as PHS employees.  42 U.S.C. § 233(g)(1)(A).  A health center must submit an application to the Secretary of Health and Human Services for its employees to be "deem[ed]" PHS employees.  42 U.S.C. § 233(g)(1)(D).

Plaintiff does not dispute that Dr. Roca was an employee of Lowell Community Health Center ("LCHC").  Nor does he dispute the evidence proffered by the government that LCHC receives federal funds pursuant to 42 U.S.C. § 254b and, as an entity, has been deemed eligible for liability protection by the Secretary of Health and Human Services since 2016.

The Secretary's deeming determination does not, however, conclusively establish liability protection for services rendered by health center employees to individuals who are not patients of the health center, such as the decedent here. See 42 U.S.C. § 233(g)(1)(B)-(C).

Services provided to individuals who are not health center patients are subject to liability protection only if, as relevant here,

the Secretary determines, after reviewing an
application submitted [by a deemed health center]
under subparagraph (D), that the provision of the
services to such individuals—

...

(iii) [is] otherwise required under an employment
contract (or similar arrangement) between the entity
and an officer, governing board member, employee, or
contractor of the entity.

42 U.S.C. § 233(g)(1)(C).

Finally, the Secretary has provided by regulation that

certain services provided to non-health center patients

automatically qualify for liability protection without the

requirement that a health center submit a separate application

for additional coverage.  See 42 C.F.R. § 6.6(e)(4).  The

government contends that Dr. Roca's treatment of the decedent

qualified for automatic liability protection under

§ 6.6(e)(4)(ii) which applies to

[p]eriodic hospital call or hospital emergency room
coverage [that] is required by the hospital as a
condition for obtaining hospital admitting privileges.
There must also be documentation for the particular
health care provider that this coverage is a condition
of employment at the health center.

42 C.F.R. § 6.6(e)(4)(ii).

**B. Dr. Roca Was Properly Deemed an Employee of the PHS**

Whether Dr. Roca was properly deemed an employee of

the PHS eligible for liability protection depends upon

whether the government has proffered sufficient

documentation that Dr. Roca provided services to the

-5-

decedent as required under his employment contract with
LCHC. See 42 U.S.C. § 233(g)(C)(iii); see also 42 C.F.R. §
6.6(e)(4)(ii).

Under § 6.6(e)(4)(ii) of the regulation, the government
must provide evidence that 1) Lowell General Hospital ("LGH")
required Dr. Roca to treat non-health center patients on-call in
order to obtain hospital admitting privileges and 2) on-call
coverage at LGH is a condition of Dr. Roca's employment at LCHC.

The parties primarily dispute whether or not the on-call
coverage that Dr. Roca provided at LGH constituted a condition
of his employment at LCHC.

First, the government provides documentary evidence that
Dr. Roca was required by his employment contract to participate
in the departmental call schedule for LCHC patients.  Such
participation includes

> addressing all [LCHC] patient care responsibilities
> when such patients seek services either by the
> telephone or when they present at Lowell General
> Hospital.

That provision establishes that Dr. Roca was required, in some
circumstances, to serve LCHC patients at LGH.

The government also proffers evidence of the LGH rules and
regulations, one of which requires that, if Dr. Roca is to admit
and provide care for LCHC patients at LGH, he has to be on the
LGH staff.  Furthermore, the government contends that, based

-6-

upon the LGH rules and regulations and an affidavit of Dr. Roca, in order for Dr. Roca to be on the LGH staff, he was required to provide on-call services for unassigned OB-GYN patients at LGH, including individuals who are not LCHC patients. Accordingly, Dr. Roca's employment contract with LCHC required that he provide on-call coverage at LGH.

Plaintiff asserts that no express provision of the LCHC employment contract requires Dr. Roca to provide on-call coverage at LGH but the contractual requirement that Dr. Roca serve LCHC patients at LGH compels the conclusion that providing on-call services at LGH is a condition of his employment. For purpose of the regulation, that is sufficient.

Plaintiff also rejoins that the LGH rules did not require Dr. Roca to provide on-call services based on several exceptions in those rules but that rejoinder is unpersuasive. Plaintiff proffers no evidence suggesting that Dr. Roca would have qualified for any exception. The government, by contrast, has met its evidentiary burden for establishing that Dr. Roca was required to be on call at LGH by virtue of provisions contained in his LCHC employment contract. Furthermore, Dr. Roca's averment that he received no compensation "other than the regular compensation received from [LCHC]" for the services he provided to the decedent indicates that he was on-call at LGH to serve his employer, LCHC.

-7-

Dr. Roca was required to treat on-call patients at LGH as part of his employment with LCHC.  Providing such coverage was also a condition of obtaining admission privileges at LGH. Accordingly, the medical service Dr. Roca provided to decedent was within the scope of his employment and for the purpose of those services, he was deemed an employee of the PHS. <u>See</u> 42 C.F.R. § 6.6(e)(ii).

### C. Challenge to 42 C.F.R. § 6.6(e)(4)

Plaintiff challenges the foundation of Dr. Roca's liability coverage by asserting that the U.S. Department of Health and Human Services impermissibly interpreted FSHCAA when it promulgated 42 C.F.R. § 6.6(e)(4).  It contends that 42 C.F.R. § 6.6(e)(4) abrogates the statute's unambiguous command that the Secretary review a deeming application with the requisite "detailed information [and] supporting documentation" and make a factual determination that the applicant meets the requirements listed in subparagraphs (B) and (C) of the statute.

To assess whether the Secretary of Health and Human Services permissibly interpreted FSHCAA when it promulgated the regulation, the Court applies the <u>Chevron</u> framework. <u>See</u> <u>Chevron, U.S.A. Inc.</u> v. <u>Nat'l Res. Def. Council Inc.</u>, 467 U.S. 837 (1984).  First, this Court must determine whether "Congress has directly spoken to the precise question at issue." <u>Massachusetts</u> v. <u>Sebelius</u>, 638 F.3d 24, 30 (1st Cir. 2011)

-8-

(quoting Chevron, 467 U.S. at 842).  If the intent of Congress
is unambiguous, the Court will apply the plain meaning of the
law using familiar textual principles.  Id.  If, however,
Congress has not spoken unambiguously to the precise issue, the
agency interpretation will be "given controlling weight unless
[it is] arbitrary, capricious, or manifestly contrary to the
statute." Flock v. U.S. Dep't of Transp., 840 F.3d 49, 54 (1st
Cir. 2016) (quoting Chevron, 467 U.S. at 843-44).[1]

     The statutory scheme does not unambiguously preclude the
regulation.  The plain text of the statute requires, at a
minimum, only a single deeming application.  Under subparagraph
(D), the Secretary

> may not under subparagraph (A) deem an entity...and
> may not apply such deeming to services described in
> subparagraph (B)(ii) unless the entity has submitted
> an application for such deeming to the Secretary.

42 U.S.C. § 233(g)(1)(D) (emphases added).  The statute makes a
linguistic distinction between "deem[ing] an entity" under
subparagraph (A) and "apply[ing] such deeming to services
described in subparagraph (B)(ii)", i.e., services rendered to
non-patients of a health center.  Id.  A healthcare provider is
required to submit (and LGH has submitted) an application to be

---

[1] The Court is aware that the United States Supreme Court is actively
considering the propriety of the Chevron doctrine.  See Loper Bright
Enterprises v. Raimondo, 45 F.4th 359 (D.C. Cir. 2022), cert. granted, 143 S.
Ct. 2429 (2023).  The outcome of that case does not, however, ultimately bear
upon this Court's decision.

"deem[ed] an entity" pursuant to subparagraph (A).  But that deeming determination needs to be further "appl[ied]" to extend to the non-patient services described in subparagraph (C).  Id.

The statute expressly requires that an entity submit "an application for such deeming" as a prerequisite of both "deeming an entity" and "appl[ying]" the deeming determination to non-patient services.  Id. (emphasis added).  The statute refers to the term "application" in the singular, indicating that at least, but not necessarily more than, one application is required.  Equally pertinent, the statute requires an application for "such deeming."  The phrase "such deeming" by itself refers to an initial deeming determination pursuant to subparagraph (A), not the "appl[ication of] such deeming" to the non-patient services described in subparagraph (C).

The statute unambiguously requires that an entity submit an initial deeming application.  It is silent, however, as to whether entities are required to submit additional applications for an initial deeming determination to be "appl[ied]" to the non-patient services described in subparagraph (C).  The statute does, however, expressly reserve setting forth the "form and...manner" of applications to agency discretion.  Id.

The regulation appropriately fills the interstice left by the statute.  See SEC v. Chenery Corp., 332 U.S. 194, 202 (1947) ("The function of filling in the interstices of the Act should

-10-

be performed...through this quasi-legislative promulgation of rules to be applied in the future"). In 42 C.F.R. § 6.6(e)(4), the Secretary has delineated several specific circumstances in which the initial deeming application suffices to make a coverage determination. See, e.g., 42 C.F.R. § 6.6(e)(4)(i)(A) (describing non-patient services provided pursuant to a community health center affiliation with a school).

If the scenario at issue does not "fit[] squarely" within the description of one the scenarios listed in the regulation, the regulation instructs that "the health center should seek a particularized determination of coverage." Id. at § 6.6(e)(4). In other words, for situations that do not fit precisely within the facts of the examples listed in the regulation, the Secretary has determined that the initial deeming application does not contain sufficient information to make a coverage determination and therefore another application is needed.

Plaintiff contends that even if the statute requires only a single application, the regulation abrogates statutory text by waiving the requirement that the application "contain detailed information" to ensure that the requirements of subparagraphs (B) and (C) are met. In plaintiff's view, it is impossible to ascertain whether such requirements are met based on just the initial deeming application and yet the regulation permits just that.

-11-

Plaintiff fails, however, to consider that the statute expressly left the Secretary with discretion to decide which "detailed information" is needed to ascertain whether the requirements of subparagraphs (B) and (C) are met.  With respect to the examples listed in the regulation, the Secretary has found that the information contained in an initial deeming application sufficiently enables a determination.

As relevant here, the Secretary has rationally ascertained that care provided to non-patients

> [during] periodic hospital call...[a]s required by the hospital...[and a]s a condition of employment at the health center

always meets the requirements of subparagraphs (B) and (C). See 42 C.F.R. § 6.6(e)(4)(ii).  The situation described in the regulation fits squarely within the broader pronouncement of the statute that coverage extends to any non-patient services that are "otherwise required under an employment contract... between the entity and an... employee." 42 U.S.C. 233(g)(1)(C)(iii). Thus, for the scenario described in the regulation, additional information in a separate deeming application is not relevant to the Secretary's coverage decision.

It is clear that the statute does not unambiguously foreclose the Secretary's interpretation.  The Court is satisfied that the statute demonstrates Congressional intent to vest the Secretary with the discretion to determine the

information it required as part of the application process.
While this Court is not required to proceed to Chevron step two,
it also concludes, that the regulation reflects a reasonable
interpretation of the statute. See Lovgren v. Locke, 701 F.3d 5,
31 (1st Cir. 2012) (citing Mayo Found. For Med. Educ. & Research
v. United States, 562 U.S. 44, 59 (2011)).

As described above, it was a reasonable textual
interpretation for the Secretary to conclude that non-patient
services "required under an employment contract" include
"[p]eriodic hospital call...[a]s required" by both the health
center as a condition of employment and the hospital.  The
greater includes the lesser.

Furthermore, as the government contends, it is burdensome
for health centers to seek particularized coverage
determinations, especially in common scenarios where health
center doctors treat non-patients of health centers.  Thus, the
Secretary presumably deduced that eliminating paperwork in clear
cases comports with the intent of FSHCAA, which seeks to
alleviate certain financial burdens placed on historically
under-resourced community health centers. See Wilson v. Big
Sandy Healthcare, Inc., 553 F. Supp. 2d 825, 830 (E.D. Ky.
2008).

Accordingly, the agency's interpretation will be upheld and
the motion to substitute will be allowed.

**ORDER**

For the foregoing reasons,

1) the motion of defendant, United States of America, to substitute itself for defendant Fernando Roca, M.D. (Docket No. 45), is **ALLOWED,** and

2) the cross-motion of plaintiff, Brad O'Brien, personal representative of the Estate of Melissa Allen (Docket No. 50), to remand the case to state court, is **DENIED.**

**So ordered.**

　　　　　　　　　　　　　　　　　　　　 /s/ Nathaniel M. Gorton
　　　　　　　　　　　　　　　　　　　　Nathaniel M. Gorton
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  March 1, 2024